UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

* * *

| | |
|---|---|
| BRENDAN G. and KIRSTEN L. JOHNSON, | Case No. 2:19-CV-674 JCM (DJA) |
| Plaintiff(s), | ORDER |
| v. | |
| UNITED STATES OF AMERICA, | |
| Defendant(s). | |

Presently before the court is defendant United States of America's ("the government") motion for summary judgment. (ECF No. 13). Plaintiffs Brendan ("Dr. Johnson") and Kirsten ("Mrs. Johnson") Johnson (collectively "the Johnsons") filed a response (ECF No. 14), to which the government replied (ECF No. 16).

**I.   Background**

The following facts are undisputed. (*See* ECF Nos. 13 at 5; 14 at 7).

The Johnsons brought this suit seeking refunds of $373,316, $192,299, and $114,500 after allegedly overpaying federal income tax and related penalties for tax years 2008, 2009, and 2010. (*See* ECF No. 1). The Internal Revenue Service ("IRS") audited the Johnsons' income tax returns for the three years at issue and determined there was a tax deficiency each year. *See* ECF No. 13 at 7). Specifically, the IRS determined that the Johnsons were liable for claimed schedule E losses related to real estate and to Dr. Johnson's business investments. (*See id.* at 4).

During the years at issue, the Johnsons resided in Las Vegas. (*See id.* at 5). Dr. Johnson was employed as an orthodontal surgeon. (*See id.* at 6). Dr. Johnsons also maintained investments in several entities affiliated with ClearChoice, a company related to Dr. Johnson's medical practice, and with Jamblas Investments, LLC and Jamblas Management Services,

**James C. Mahan**
**U.S. District Judge**

1 companies Dr. Johnson and his partner in medical practice formed to manage the buildings in
2 which his offices were located.  (*See id.* at 6–7).

3      Mrs. Johnson worked for her husband's medical practice and alleges she was also a real
4 estate professional.  (*See id.* at 6, 11).  She submitted electronic logs to the IRS purporting to
5 indicate the hours she spent performing real estate activities for the years in question.  (*See id.* at
6 11).  The Johnson's former accountant has also submitted additional logs, supposedly for
7 clarification, that show discrepancies with the original logs.  (*See id.*)

8      The Johnsons owned a home and four additional real estate properties.  (*See id.* at 8–11).
9 Two of the additional properties were located near Big Bear, California (the "Eagle Drive" and
10 "Lake Drive" properties), and two were located in Las Vegas, Nevada (the "Brunswick Bay" and
11 "Peaceful Harbor" properties).  (*See id.*)

12      The Johnsons owned the Eagle Drive property in tax years 2008 and 2009 and did not
13 rent it to others.  (*See id.* at 8).  They maintained personal use of the property and allowed
14 family, friends, and coworkers to use it rent-free.  (*See id.*)

15      The Johnsons owned the Lake Drive property during all three years at issue.  (*See id.* at
16 9).  They used property management companies to rent the property as a short-term vacation
17 rental in 2008 and 2009.  (*See id.*)  In 2010, they did not rent the property and instead used it for
18 personal purposes.  (*See id.* at 10)

19      The Johnsons also rented out the Brunswick Bay and Peaceful Harbor properties using a
20 property management company during all three years at issue.  (*See id.*)  There is no
21 documentation of any lease agreements or occupancy logs for any of the rented properties.  (*See*
22 *id.* at 9, 11)

23      The Johnsons also owned a commercial plane hangar in North Las Vegas and a Cirrus
24 SR22 aircraft, neither of which were rented during the years at issue.  (*See id.* at 8).

25      As a result of the IRS's determination during the 2014 audit, the Johnsons filed amended
26 tax returns in 2018.  (*See id.* at 5).  The Johnsons then filed the instant suit claiming they were
27 entitled to a refund for each of the three audited years.  (*See* ECF No. 1).  The government now
28

**James C. Mahan**
**U.S. District Judge**

- 2 -

moves for summary judgment, arguing that the Johnsons' activities related to their schedule E losses were passive and therefore not deductible. (*See id.*)

**II.     Legal Standard**

The Federal Rules of Civil Procedure allow summary judgment when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that "there is no genuine dispute as to any material fact and the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a). A principal purpose of summary judgment is "to isolate and dispose of factually unsupported claims." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24 (1986).

For purposes of summary judgment, disputed factual issues should be construed in favor of the nonmoving party. *Lujan v. Nat'l Wildlife Fed.*, 497 U.S. 871, 888 (1990). However, to withstand summary judgment, the nonmoving party must "set forth specific facts showing that there is a genuine issue for trial." *Id.*

In determining summary judgment, a court applies a burden-shifting analysis. "When the party moving for summary judgment would bear the burden of proof at trial, it must come forward with evidence which would entitle it to a directed verdict if the evidence went uncontroverted at trial. In such a case, the moving party has the initial burden of establishing the absence of a genuine issue of fact on each issue material to its case." *C.A.R. Transp. Brokerage Co. v. Darden Rests., Inc.*, 213 F.3d 474, 480 (9th Cir. 2000) (citations omitted).

By contrast, when the nonmoving party bears the burden of proving the claim or defense, the moving party can meet its burden in two ways: (1) by presenting evidence to negate an essential element of the nonmoving party's case; or (2) by demonstrating that the nonmoving party failed to make a showing sufficient to establish an element essential to that party's case on which that party will bear the burden of proof at trial. *See Celotex Corp.*, 477 U.S. at 323–24. If the moving party fails to meet its initial burden, summary judgment must be denied and the court need not consider the nonmoving party's evidence. *See Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 159–60 (1970).

James C. Mahan
U.S. District Judge

If the moving party satisfies its initial burden, the burden then shifts to the opposing party to establish that a genuine issue of material fact exists. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). The opposing party need not establish a dispute of material fact conclusively in its favor. *See T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 631 (9th Cir. 1987). It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." *Id.*

In other words, the nonmoving party cannot avoid summary judgment by relying solely on conclusory allegations that are unsupported by factual data. *See Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989). Instead, the opposition must go beyond the assertions and allegations of the pleadings and set forth specific facts by producing competent evidence that shows a genuine issue for trial. *See Celotex*, 477 U.S. at 324.

At summary judgment, a court's function is not to weigh the evidence and determine the truth, but to determine whether a genuine dispute exists for trial. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). The evidence of the nonmovant is "to be believed, and all justifiable inferences are to be drawn in his favor." *Id.* at 255. But if the evidence of the nonmoving party is merely colorable or is not significantly probative, summary judgment may be granted. *See id.* at 249–50.

The Ninth Circuit has held that information contained in an inadmissible form may still be considered for summary judgment if the information itself would be admissible at trial. *Fraser v. Goodale*, 342 F.3d 1032, 1036 (9th Cir. 2003) (citing *Block v. City of Los Angeles*, 253 F.3d 410, 418–19 (9th Cir. 2001) ("To survive summary judgment, a party does not necessarily have to produce evidence in a form that would be admissible at trial, as long as the party satisfies the requirements of Federal Rules of Civil Procedure 56.")).

**III.   Discussion**

Taxpayers can deduct certain business expenses or expenses related to the production of income. *See* 26 U.S.C. § 162. Taxpayers cannot deduct losses if they come from a passive activity. *See* 26 U.S.C. § 469. Passive activities are activities in which the taxpayer does not "materially participate." *See* 26 U.S.C. § 469(c)(1). Material participation is defined as "regular,

James C. Mahan
U.S. District Judge

- 4 -

continuous and substantial" participation in the operations of the enterprise. *See* 26 C.F.R. § 1.469-5T.[1]  There are seven tests listed in 26 C.F.R. § 1.469-5T under which courts are to evaluate whether a taxpayer materially participated. Here, the applicable test requires the taxpayer to prove that they "participate[d] in the activity on a regular, continuous, and substantial basis" during the year in which they claim the deduction. 26 C.F.R. § 1.469-5T(a)(7).

Rental activities are presumptively passive, and any losses from rentals are *per se* passive. *See* 26 U.S.C. 469(c)(4). However, there is an exception, which the parties refer to as the "real estate professional" exception, by which a taxpayer can overcome the passive presumption. *See* 26 U.S.C. § 469(c)(7)(B); *Gragg v. United States*, 831 F.3d 1189, 1190 (9th Cir. 2016). To qualify as a real estate professional, a taxpayer must prove:

> (i) more than one-half of the personal services performed in trades or businesses by the taxpayer during such taxable year are performed in real property trades or businesses in which the taxpayer materially participates, and
>
> (ii) such taxpayer performs more than 750 hours of services during the taxable year in real property trades or businesses in which the taxpayer materially participates.

26 U.S.C. § 469(c)(7)(B). The taxpayer bears the burden of proving that he meets every condition of a tax deduction. *See Davis v. Commissioner*, 394 F.3d 1294, 1298 n.2 (9th Cir. 2005). "If evidence to establish a deduction is lacking, the taxpayer, not the government suffers the consequence." *Talley Indus. Inc. v. Commissioner*, 116 F.3d 382, 387–88 (9th Cir. 1997).

The Johnsons concede that several entries on the log are erroneous and should not count toward the requisite 750 hours of work necessary for the real estate professional exemption. (*See* ECF No. 14). Removing these conceded entries—those related to Investment Counsel Company, work on their personal home, and the airplane hangar—reduces the time spent on real estate activity to below 750 hours in 2008 and 2010. (*See* ECF No. 13-4). Therefore, the court finds that Mrs. Johnson was not a real estate professional during tax years 2008 and 2010.

---

[1] 26 C.F.R. § 1.469-5T is a temporary regulation.  26 C.F.R. § 1.469-9(b)(5) later permanently adopted the definitions found in the temporary regulation.

**James C. Mahan**
**U.S. District Judge**

- 5 -

1        Thus, only Mrs. Johnson's status in 2009 remains.  The Johnsons argue that the 87.5 hours Mrs. Johnson spent studying for the California real estate exam in 2009 must be counted in the requisite 750 hours.  (*See* ECF No. 14 at 21).  The Johnsons also argue that a license is not necessary for Mrs. Johnson to qualify as a real estate professional.  (*See id.*)  A license is not a requirement for material participation under the applicable federal regulations.  *See* C.F.R. § 1.469-5T.  The tax court has generally disallowed educational activities when evaluating an individual's status as a real estate professional.  *See, e.g.*, *Antonyshyn v. Commissioner*, T.C. Memo. 2018-169.

Studying for a license is not material participation as it does not pertain to the operation or day-to-day management of the properties.  *See Syed v. Commissioner*, T.C. Memo 2017-226 (finding that research on a trade does not constitute material participation).  The Johnsons simultaneously argue that licensure has no bearing on Mrs. Johnson's status as a real estate professional while asserting that time spent preparing to test for licensure makes her a professional.  *(See* ECF No. 14 at 21).  The Johnsons cannot take both positions.  Because licensure has no bearing on Mrs. Johnson's status as a professional, this court finds that time she spends studying for licensure also has no bearing.  Therefore, Mrs. Johnson falls short of the 750-hour requirement in 2009 as well.  (*See* ECF No. 13-4).  The court grants the government's summary judgment motion as to the real estate professional exemption.

*B. Pass-Through*

The Johnsons also argue they are entitled to deductions for losses for "pass-through" activities.  (*See* ECF No. 14 at 25).  The government argues that there is no evidence of these deductions.  (*See* ECF No. 13 at 28–29).

Corporate partnerships do not pay taxes themselves; instead, each partner claims a pro-rata share of the partnerships profits and losses and assumes the corresponding tax liability.  *See Kantor v. Commissioner*, 998 F.2d 1514, 1517 n.1 (9th Cir. 1993).  This is known as pass-through liability.  In order for a partner to claim a pass-through deduction, they must have materially participated in the operation of the business pursuant to the definition in 26 C.F.R. § 1.469-5T.  *See* 26 U.S.C. § 469

**James C. Mahan**
**U.S. District Judge**

- 6 -

The Johnsons' argue that because they have provided tax returns for some of the entities involved in these pass-through losses, they have established their deduction. (*See* ECF No. 14 at 25). Claiming a deduction and establishing the underlying loss are separate. *See* 26 U.S. § 6001. The Johnsons note that the IRS accepted their expenses as nonpassive activities and cite to exhibit 18 for that proposition. (*See* ECF No. 14 at 26). Exhibit 18 is a deposition transcript wholly unrelated to the instant question. (*See* ECF No. 14-1). The court thus presumes that the Johnsons intended to cite exhibit 17—the FOIA request of over 1000 pages—as proof of the IRS's determination.

The Johnsons never provide specific citations to any information within this voluminous exhibit and instead invite the court to peruse it in its entirety to substantiate their arguments. "It behooves litigants, particularly in a case with a record of this magnitude, to resist the temptation to treat judges as if they were pigs sniffing for truffles." *See Downs v. Los Angeles Unified Sch. Dist.,* 228 F.3d 1003, 1007 n.1 (9th Cir.2000) (citing *United States v. Dunkel,* 927 F.2d 955, 956 (7th Cir.1991)); *see also Carmen v. San Francisco Unified Sch. Dist.*, 237 F.3d 1026, 1031 (9th Cir. 2001) (admonishing a party for failing to provide the court with specific citations and finding that the district court appropriately granted summary judgment based on the lack of citation). Regardless, this is a *de novo* proceeding. *See Ray v. United* States, 762 F.2d 1361, 1362 (9th Cir. 1985). The IRS's decision has no bearing on this court's analysis. This court finds that a tax return without further evidence substantiating the loss is insufficient to establish the Johnsons' right to the passthrough loss deduction.

**IV.    Conclusion**

Accordingly,

IT IS HEREBY ORDERED, ADJUDGED, and DECREED that the government's motion for summary judgment (ECF No. 13) be, and the same hereby is, GRANTED.

The clerk is instructed to enter judgment and close the case accordingly.

DATED August 3, 2020.

_____
UNITED STATES DISTRICT JUDGE

**James C. Mahan**
**U.S. District Judge**